Dear Dr. Ahr:
This opinion is rendered in response to your request which asks the following question:
 Does the Department of Mental Health have the authority to require any vendor receiving Department funds through contract to utilize the following listed funding sources first before charging the state for any client services?
 1. Federal Housing Assistance Payment Program funds received by persons or organizations under Section 8 of the Housing and Community Development Act of 1974;
 2. County (including St. Louis City) funds allocated for programs for handicapped persons pursuant to section 205.968, RSMo 1978, et seq.;
 3. Philanthropic funds received by nonprofit providers such as contributions from the United Way or from other fund raising activities?
Relevant hereto is the Department's placement program provided for in Section 630.605, RSMo Supp. 1981, et seq. Section630.605 provides:
 The department shall establish a placement program for persons affected by a mental disorder, mental illness, mental retardation, development disability or alcohol or drug abuse. The department may utilize residential facilities, day programs and specialized services which are designed to maintain a person who is accepted in the placement program in the least restrictive environment in accordance with the person's individualized treatment, habilitation or rehabilitation plan. The department shall license, certify and fund, subject to appropriations, a continuum of facilities, programs and services short of admission to a department facility to accomplish this purpose.
Additionally, it is observed that Section 630.640, RSMo Supp. 1981, specifies the Department's responsibility to pay for client services:
 1. If a client receiving services under this chapter is ineligible for public assistance benefits from any source, or such benefits are inadequate to meet the costs of such services, his monthly costs shall be paid or supplemented out of funds appropriated for that purpose to the department.
 2. If payments for the support and maintenance of the client are made from funds appropriated to the department, the department shall charge the client or those responsible for his support under this chapter for his support and maintenance pursuant to sections 630.205 to 630.215. [Emphasis added.]
The term "public assistance benefits" is somewhat amorphous eluding exact definition. However, for the purpose of answering the specific questions posed herein, reference is made to a relevant and dispositive characteristic of public assistance, to-wit: Entitlement.
 Generally speaking, welfare assistance pursuant to legislative provision is a matter of statutory entitlement for persons qualified to receive it, as distinguished from charity, and benefits are not intended as gifts. Accordingly, if a person meets the requirements prescribed by statute under an assistance program, the welfare agency is obligated to recognize his claim. [Emphasis added.]
81 C.J.S., Social Security and Public Welfare, § 2 (1977).
It is our view that philanthropic funds such as those received from the United Way or other fund raising activities clearly are not public assistance benefits. Such funds are charitable in nature and not public tax moneys. There is no statutory entitlement thereto.
Section 8 housing funds (42 U.S.C. § 1437f), however, constitute a government program expending public tax funds in the form of cash payments (rent subsidies) to landlords on behalf of poor persons meeting the specified eligibility requirements. The program has as its purpose "aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, . . . ." 42 U.S.C. § 1437f(a).
Additionally, Section 8 financial aid is a matter of entitlement:
 It is apparent, from the statutory language and the regulations promulgated to effect the Act, that the purpose of the Act is to enable poor and elderly persons, like plaintiff, to take full advantage of housing assistance offered by the federal government.
* * *
 Benefits like those provided under the Act are a matter of statutory entitlement, for persons qualified to receive them, and those persons must receive due process before the benefits are terminated. [Emphasis added.]
Brezina v. Dowdoll, 472 F. Supp. 82, 85 (N.D.Ill. 1979).
Because Section 8 is an entitlement program, it is our conclusion that the benefits thereunder are "public assistance benefits" as the phrase is used in Section 630.640, RSMo Supp. 1981.
County sheltered workshops are authorized in Section 205.968, RSMo 1978:
 1. The county court or other governing body of any county or city not within a county in this state may establish a sheltered workshop and/or residence facility for the care and/or employment of handicapped persons. The facility may operate at one or more locations in the county or city not within a county. [Emphasis added.]
 2. The facility shall be operated for handicapped persons as defined in section 178.900, RSMo, who are employed at the facility or in the community and/or for persons who are handicapped due to a developmental disability, where the disability is attributable to mental retardation, cerebral palsy, epilepsy, or other neurological conditions which are closely related to mental retardation or require treatment similar to mental retardation.
Tax levies for county sheltered workshops are authorized in Section 205.971, RSMo 1978:
 The county court or other governing body of the county or city not within a county may, upon approval of a majority of the qualified voters of such county or city not within a county voting thereon, levy and collect a tax not to exceed two mills per dollar of assessed valuation upon all taxable property within the county or city not within a county for the purpose of establishing and maintaining the county or city sheltered workshop and/or residence facility. The tax so levied shall be collected along with other county taxes, or in the case of a city not within a county, with other city taxes, in the manner provided by law. All funds collected for this purpose shall be deposited in a special fund for the facility, and shall be used for no other purpose. Deposits in the fund shall be expended only upon approval of the facility's board of directors.
An appointive board of directors is granted broad discretion under Section 205.970.2, RSMo Supp. 1981, in the operation of a facility:
 The administrative control and management of the facility shall rest solely with the board of directors, and the board shall employ all necessary personnel, fix their compensation, and provide suitable quarters and equipment for the operation of the facility from funds made available for this purpose.
Additionally, the board possesses discretion in the admission of persons to the facility under Section 205.970.5, RSMo Supp. 1981:
 The board shall set rules for admission to the facility, and shall do all other things necessary to carry out the purposes of sections 205.968 to 205.972.
It is our view, because of the broad discretion granted to the board of directors to manage and administer the tax levy funds, including the authority to set admission criteria, that the General Assembly, in enacting Sections 205.968, et seq, did not establish therein a program properly classified as a public assistance benefit. Although the legislature did establish eligibility requirements for participation in the programs, there exists no evidence of an intent to establish an entitlement program. On the contrary, the General Assembly granted discretion to the local boards to establish rules for admission. Moreover, Section 205.968, supra, makes the establishment of such a workshop discretionary, there being no statutory mandate that each county create and operate a sheltered workshop or residence facility.
CONCLUSION
Therefore, it is the opinion of this office that the Department of Mental Health under Section 630.640, RSMo Supp. 1981, must require vendors receiving Department funds through contract to utilize Section 8 housing assistance payments (14 U.S.C. § 1437f) before using state funds. However, because county or St. Louis City funds derived through Section 205.968, RSMo 1978,et seq., and philanthropic funds such as those received from the United Way or other fund raising activities, are not "public assistance benefits" for purposes of Section 630.640, RSMo Supp. 1981, the Department of Mental Health may not require such vendors to utilize these moneys before charging the state for client services.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Edwin H. Steinmann.
Very truly yours,
 JOHN ASHCROFT Attorney General